FILED
SEP 02 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CASE NO. 1:26 CR 00393 |
| JINGMING CHEN, | ) | Title 18, United States Code, Section 371 |
| Defendant. | ) | JUDGE LIOI |

GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

The Conspirators

1. Defendant JINGMING CHEN was a United States citizen and resided in or around Quincy, Massachusetts.

2. Conspirator-1 was a citizen of the People's Republic of China and resided in or around Aurora, Ohio, in the Northern District of Ohio, Eastern Division. Conspirator-1 entered the United States on a B-2 visa in or around January 2020. Conspirator-1's visa expired in or around July 2020, after which Conspirator-1 was illegally present in the United States, having overstayed her visa.

Procedures for Obtaining Lawful Permanent Resident Status

3. The United States Citizenship and Immigration Service ("USCIS") is the agency within the United States Department of Homeland Security that oversees lawful immigration to the United States, including applications by foreign nationals for lawful permanent resident status (commonly known as a "Green Card").

4. In deciding whether foreign nationals are eligible for lawful permanent resident status, USCIS reviews applications and petitions, conducts interviews, obtains and reviews supporting documentation, and approves or denies applications and petitions.

5. A foreign national present in the United States who seeks to obtain lawful permanent residency in the United States may start the Green Card process by applying for an "adjustment of status" based on the foreign national's marriage to a United States citizen. That process generally entails the following, among other things:

a. First, the foreign national must have married a United States citizen, and the marriage must have been bona fide, which is a marriage entered to establish a genuine marital union, not to evade the immigration laws. The foreign national must show USCIS that they have terminated any prior marriages.

b. Second, following the marriage, the United States citizen spouse must file a USCIS Form I-130 Petition for Alien Relative ("Form I-130"), documenting their relationship to a foreign national. The foreign national must file a corresponding USCIS Form I-485 Application to Register Permanent Residence or Adjust Status ("Form I-485").

c. Third, after filing, USCIS reviews the submissions, conducts background and security checks, and generally conducts an in-person interview, among other things.

d. Fourth, if, following the interview, the application is approved and the married couple has been married for less than two years, then the foreign national is granted two-year conditional permanent resident status through a Green Card that is valid for only two years.

e. Fifth, to change conditional permanent resident status to non-conditional, during the 90-day period before the conditional permanent resident status expires, the foreign

national must file a USCIS Form I-751, Petition to Remove Conditions on Residence. If USCIS approves the petition, the foreign national is granted lawful permanent resident status.

## COUNT 1

(Conspiracy to Commit Marriage Fraud and Immigration Document Fraud, 18 U.S.C. § 371)

The Grand Jury charges:

6. The factual allegations contained in paragraphs 1 through 5 of this Indictment are incorporated by reference as if stated fully herein.

### The Conspiracy and Scheme to Defraud

7. From on or around January 2025, through on or about February 19, 2026, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant JINGMING CHEN, Conspirator-1, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree with each other to commit offenses against the United States, that is:

a. to knowingly and unlawfully enter into marriage for the purpose of evading a provision of the immigration laws of the United States, in violation of Title 8, United States Code, Section 1325(c); and

b. to knowingly make under oath, and as permitted under penalty of perjury under Title 28, United States Code, Section 1746, knowingly subscribe as true, any false statement with respect to a material fact in any application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and knowingly present any such application, affidavit, and other document which contained any such false statement and which failed to contain any reasonable basis in law or fact, in violation of Title 18, United States Code, Section 1546(a).

The Objects and Purposes of the Conspiracy and Scheme

8. The objects and purposes of the conspiracy and scheme included, but were not limited to, the following: for the conspirators to enter into a marriage for the purpose of evading provisions of the immigration laws by (a) making false statements to immigration authorities in connection with applications for lawful permanent resident cards, (b) representing a sham marriage to be a bona fide marriage, and (c) concealing the conspiracy and scheme.

Manner and Means of the Conspiracy and Scheme

9. It was part of the conspiracy and scheme that:

a. The conspirators communicated with one another to arrange for a sham marriage, to create evidence to support the false claim that the marriage was bona fide, and to plan to make and submit false statements to USCIS to obtain lawful permanent resident status and other immigration benefits for Conspirator-1, including by using an encrypted messaging application on their cellular telephones to send messages, photographs, and documents. The conspirators discussed obtaining a prenuptial agreement and various joint accounts, including a joint bank account, joint insurance policy, joint cell phone account, and joint discount store membership account. The conspirators also discussed purchasing a fake diamond ring for the wedding and posing for photographs for purported vacations as a couple.

b. The conspirators arranged for Conspirator-1 to pay Defendant, and Conspirator-1 did pay Defendant, for entering into the sham marriage, including payment of cash in person.

c. The conspirators discussed payment methods to use and amounts for Conspirator-1 to pay Defendant.

d. The conspirators had photographs of themselves taken to fabricate a sham marriage.

e. The conspirators obtained a marriage certificate.

f. The conspirators used preparers to submit, under penalty of perjury, their false statements, and document containing false statements, regarding their sham marriage, to USCIS, including on immigration forms submitted to apply for permanent residency.

Overt Acts in Furtherance of the Conspiracy and Scheme

10. In furtherance of the conspiracy and scheme, and to accomplish the objects and purposes and conceal the existence thereof, a member of the conspiracy committed and caused to be committed, in the Northern District of Ohio, and elsewhere, the following overt acts, among others:

11. On or about, January 6, 2025, Conspirator-1 and Defendant exchanged text messages about the steps for obtaining a green card based and the schedule for payments to Defendant, including the following exchanges: Conspirator-1 stated that there were four steps: registration and notarization, submitting the application, obtaining the green card, and making the green card permanent. Conspirator-1 agreed to pay Defendant for each step. Conspirator-1 also agreed to pay for Defendant's expenses.

12. On or about January 7, 2025, Conspirator-1 and Defendant exchanged text messages, including about making up a false back story for the history their relationship, such as the date they met, who introduced them, and a history that included traveling together. They discussed describing their relationship as an online romance and a long-distance relationship, and that they would say that Defendant's parents initially objected to their relationship to explain the time it took for them to marry. Conspirator-1 and Defendant also discussed the need for photographs of them to attempt to make their marriage appear authentic. Conspirator-1 asked Defendant about different insurances that Defendant possessed and if Conspirator-1 could be added to the policies. They discussed how to spell Defendant's name.

13. On or about January 8, 2025, Conspirator-1 and Defendant exchanged text messages about opening joint accounts for cell phones and discount store memberships.

14. On or about January 9, 2025, Conspirator-1 and Defendant exchanged about opening joint bank accounts.

15. On or about January 10, Defendant and Conspirator-1 filed an intent to get married in Quincy, Massachusetts.

16. On or about January 10, 2025, Defendant directed Conspirator-1 to buy a cheap fake diamond ring to use for a marriage ceremony.

17. On or about January 13, 2025, Defendant and Conspirator-1 married in Quincy, Massachusetts.

18. On or about April 25, 2025, Defendant directed a preparer to submit his Form I-130 to USCIS.

19. On or about April 25, 2025, Conspirator-1 directed a preparer to submit her Form I-485 to USCIS.

20. On or about February 19, 2026, in an interview with USCIS, Defendant initially claimed that his marriage to Conspirator-1 was real, before admitting that it was a sham marriage he entered "to help [his] friend out" and because Conspirator-1 promised to "pay [Defendant] after receiving the green card."

All in violation of Title 18, United States Code, Section 371.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.